represent the claimant appellant in this matter. The claimant owns a shopping center in Mandeville, Louisiana, and they filed a business economic loss claim with the Deep program decided to reallocate the revenue recorded in its CAM last year account over the previous year in violation of the amended settlement agreement and this court's recent 495 opinion. Can I ask, is your case kind of in a weird place? Because if it had been still pending before the district court, it would have gotten remanded back? Yes. Is that right? But if because it was with us, so do you want us to rule or do you want us to send it back to the district court to be remanded back with a big bow on it with all the other cases that are being remanded back? I'd like it to be remanded back to the district court. Without deciding whether or not there's abuse of discretion and how to allocate these fees, I mean, whether or not you can do that. You want it to be grouped with the other ones. I'm going to ask the opposing counsel that, too. Okay. But assuming we can't do that, you're going to argue for us why you win? Oh, okay, sure. You're saying that you prefer our not even ruling on the merits of this claim one way or the other, but simply remand it to the district judge for his consideration as to whether to remand it in connection with all these other cases that have been remanded to the administrator? Yes, Your Honor. That would be the best, most best administrative decision that we could make to have this one straggler kind of case that got up here before the rest of them did. Yeah, I think we were just unfortunate in our timing. We were fortunate that we weren't too late, that we still had the benefit of the 495 opinion. So that would be the best thing. Now the CAM expenses include things such as trash. Is that the same position that counsel opposite has? I'll just ask. Is that the same position that you would have? Do you think we can do it? Well, you can tell us whether we think we can do that. Cheryl, differ on that, so we need to proceed further. Okay. Well, at the beginning of each year, the CAM expenses are considered fixed expenses by the settlement program and under the amended settlement agreement. And fixed expenses are not used to calculate compensation or determine causation under the settlement agreement. At the beginning of the year, the claimants would estimate what it thought that the CAM expenses would be for the year, and then it would charge its tenants that amount over a 12-month period. Then at the end of the year, they would do a true-up as to what the difference was between the amount that they actually spent and then the amount that they collected from the tenants. Why was it decided to handle it that way and differently from, as I understand it, other income and expenses? Well, actually, Your Honor, I think that they handled it on the cash basis for all of their items. I think they may have been on the modified cash basis, which uses cash basis for income purposes and accrual basis for more long-term purposes like for property, plant, and equipment and things like that. So I don't think that anything was inconsistent. They consistently calculated CAM and CAM last year this way. So under the policy 495, you're allowed to choose whatever counting method you want to use. It could be the accrual basis counting. It could be cash. It could be modified cash. Just so long they consistently apply that, and they consistently apply this method throughout their existence. So there was no error in the way that they calculated or that they accounted for the CAM last year account because they would bill their clients at the end of the year based on the shortfall, and then they would collect it from their clients or claimants. I'm sorry, their tenants during the year, and as they would collect it, they would record it in this CAM last year account. So under the cash basis, whenever they received it, they recorded it. Now, it would be an error to take those amounts and reallocate it back to the prior years because under the cash method, you recognize it when it's received. So it wasn't received in the prior year. It was received this year, in the current year. So in your perspective, there was no error in using this cash method that allowed for the reallocation. That's correct. There was no error. And also, in light of this Court's 495 opinion, there is no authority to reallocate revenue because there was a mismatch of revenue and variable expenses. And as I said before, the CAM expenses are all fixed expenses. So what the settlement program was actually doing, they were still going beyond their authority. Even without the 495 opinion, they were matching revenue with fixed expenses. They weren't matching revenue with variable expenses. So that was my whole argument even before the 495 opinion came out. Did your client collect revenue, though, to cover expenses on a monthly pro rata basis over the year? I'm sorry? Did they collect the revenue on the monthly pro rata basis? Yes. As what they estimated, they collected revenue and then they recorded that in their CAM account. And then at the end of the year, if the expenses were too much, then they would have billed their tenants for the difference. If we were to determine this is your case one way or the other, does that affect other cases besides your case? If we were to weigh in on whether this was an appropriate method or whether this reallocation was allowed under the settlement agreement, does that affect more than just your case? Yes, it would affect more cases. If you said that the reallocation was allowed, then you'd be reversing the 495 opinion. And then the district court's auditor, which remanded all the cases back to the settlement program, to be recalculated without the reallocation of revenue would be meaningless. And the reason I ask you the question is because for us to find that there was abuse of discretion in not hearing the case, we have to find that it would impact more than just your individual calculations. Yes, it would. And also, there was another split in the appeal panel decisions as well. I believe it was in the record on appeal at 382, there was an appeal panel decision, 2015-940, which held that you could not reallocate CAM over the previous years. And in my case, they held that you can reallocate the CAM to the previous years. And BP was on the other side, so it was kind of odd to me that the settlement program would allow reallocation of CAM in one case, and then the appeal panel upheld that reallocation of CAM. And then when it came to my case, they allowed the reallocation of CAM to prior years, and the appeal panel upheld that. So I feel that the appeal panel seems to give great deference to what the settlement program does in most cases. Is the violation of the settlement agreement with the even reallocation of the revenue or the reallocation of the revenue in the first place? It's the reallocation of the revenue in the first place. That's what this court held, is that even though it may be a fair method to reallocate the revenue, it violates the settlement agreement. Which says unless there's an error, it's not to be reallocated. That's correct. Okay. Now, BP still has a position in their brief that even despite this court's 495 opinion that they still can reallocate revenue based on the AVM methodology, even though the district court held that they were going to remand the cases back to the settlement program and that reallocation of revenue was not allowed. So I'm not sure how they feel that is appropriate, but I think only in the... I guess they're saying that the opinion only applied to the four ISMs and that if you use the AVM, that before you get to the AVM, you can still reallocate revenue if there's a mismatch of revenue and variable expenses. But in my case, there's no variable expenses except for one entry in October of 2007, which has nothing to do with the CAM account. So, Your Honors, do you have any more questions? I would like to ask you, do we have to find that the district court abused its discretion before we can get into this or remand it back to the court? Is this a really big problem that the district court ought to be looking at or should we allow the district court and the administrator to handle matters like this, which don't seem to be that momentous? Well, there's an abuse of discretion when they misapply the settlement agreement, and this court held that they misapplied the settlement agreement, so therefore the court did abuse its discretion. And also there is a split in the appeal panel decisions, which I've discussed, that they allowed CAM to be reallocated in my case. In another case, they didn't allow the CAM to be reallocated. So I think on both points in the Holmes Motors Inc. case that it meets those tests and that it should be reallocated. But we don't have to reach that issue if we just remand it to be treated like the rest of them. We'd say that this one got caught up in the timing issue. We could just remand it for that reason. We don't have to even get into whether the reallocation is allowed by the settlement. We don't get into any of those issues or even whether the district court abused its discretion in not gearing the case because we're not dealing with it to try to change it. I think that would be the equitable approach. Well, anytime we don't know what to do with one of these cases, we just remand it. What was that? Oh, we don't know what to do? We don't have to find an error. Well, no, I think in light of the 495 opinion that that's the reason to just remand it, to let the district court look at it again. Because the district court has already answered this question in your favor by remanding all of these that have reallocation in the AVMN to the claim administrator to be reprocessed. That's correct. If my case was before the district court right now, they would remand it back to the settlement. To be reprocessed and inconsistent with the 495 opinion. Yes, that's correct. Oh, he says no. We'll hear. We'll wait and let him have his time. May it please the court. I'm Jeff Clark here on behalf of BP. Let me start with Judge Elrod's first question about the whole concept of remanding. In the policy 495 decision that was issued in May of last year, this court invalidated the four industry-specific methodologies, the ISMs, but it upheld the AVMM methodology in its entirety. It's undisputed that this particular claim by Pontchartrain North was decided under the AVMM methodology. So the decision has no impact on what it is that the CSSP was applying. It was applying AVMM, which this court upheld in its entirety. Judge Barbier, in deciding whether to grant discretionary review or not, and he denied it, was looking at AVMM. And so there would be no reason to send this back to have AVMM reapplied. Is it not true that the district court that all cases pending before the claims administrator were to be reprocessed using AVMM and precluded the reallocation of revenue absent error? So two things about that, Your Honor. What that's referring to are the fact that the vast majority of cases, or many of them anyway, were decided under the ISMs. So they needed to go back and be processed under AVMM. Precluded the reallocation of revenue absent error. So as to that aspect of it, Your Honor, we don't think that that should go back because we think that that was that part of Judge Barbier's decision, which we asked for reconsideration of, we think is in error. But he did do that. He did do that, but we don't— And if he did that here, that would be the same thing that would happen here. I mean, if this case was before Judge Barbier, that's what would happen to this case today. We dispute that, Your Honor, because we, in several instances, we pointed out to Judge Barbier that a particular decision below was decided under the AVMM methodology and therefore didn't need to go back. The other side agreed, and Judge Barbier let stand what had happened in the program before the Policy 495 decision. But what about his language precludes the reallocation absent error? Right, and we think you need to look at that language and decide whether that squares in the context of this appeal with the Policy 495 decision because if you look at the Policy 495 decision, it doesn't say that the AVMM methodology is upheld except, you know, only to the extent it allows reversal for errors. It just upholds the AVMM rationale and methodology in its entirety, and that includes revenue reallocation. Judge Barbier read into this Court's decision that revenue reallocation under AVMM was invalid. We don't think that comports with the decision. If we read it the same way he does— then, you know, we would be in a position where that would be this Court's ruling. But we don't think that that's— Do you want us to make the ruling or do you just want us to send it back to be processed? Do you see what I'm saying? We could just remand it because it's caught up in this timing problem, or we could actually rule on the merits on this. Yes, Your Honor, I think that our position is correct. Right? Obviously, if I knew where the Court was going to vote on the larger question, then I could give you an answer that went one way or another way. But standing here not knowing what the answer to that is behind the veil of ignorance, my answer would be that our reading of the Fifth Circuit decision from May of 2017 is correct, that Judge Barbier, in saying that revenues should be moved, is, you know, a situation— Revenues, I'm sorry, cannot be moved under AVM is incorrect because this Court's decision upheld AVMM in its entirety. And if you look at AVMM, it includes in several places, on page 3, on page 4, and even in Exhibit B, which is where the AVM methodology is, that revenues can be moved. Okay. Do we believe that we would be, I guess, abusing our discretion or not doing our duty if we were to remand without addressing the merits? No, Your Honor, and I would say that for this reason. So BP has brought a general challenge to Judge Barbier's reading of the Policy 495 decision. That is pending. It's currently stayed, but it's pending. So there would be another vehicle for you to reach that issue. So if you decided that you'd prefer to reach it as a vehicle, you know, in that other appeal, that general appeal, and not in this particular case, then we don't think, you know, in the exercise of your appellate discretion, that that would be any kind of abuse. So we could just send it back and say, this is kind of caught up in the timing, and we're sending it back to be processed along with the other ones that the District Court's doing. And we're not saying the District Court did anything wrong at all. We're just sending this one back because it got in the queue. It mixed up with the wrong fish, so to speak. So you could do that, Your Honor. Let me try to make the case to you why on... But how would we do it? What would we say? So what you would say if you kept the case, right, would be we don't need to reach the issue that's pending in the other appeal about how Judge Barbier read the Policy 495 decision. Instead, we can decide that everyone agrees, Judge Barbier, that if you have an error, if an error has been demonstrated, then the claimant can see their revenues... I'm not... Assuming argument, we're not going to agree with you that there's an error. So how can we... What would we say to send it back without ruling on the merits? I think you would say that in the Policy 495 remand orders that Judge Barbier entered, he would have, if he had this case pending in front of him, and if he thought that those orders were not mooted, essentially, by the other features of that case, that he would have sent it back. Ergo, we're going to send it back to Judge Barbier with directions to remand it to the CSSP. But you're telling me this is still going to be an issue that you are still going to press, and so we might as well decide it here today. And, yes. Is that right? That's correct. And we would say that there are some reasons to address it here as opposed to in the general challenge, because the general challenge is not one that comes up on the back of particular facts. So in this case, you have a particular set of facts. You can see why it is that the issue of the CSSP deciding, we think properly, to move revenues was correct. And so you have the advantage of a particular factual record to judge that question against here as opposed to in the general vehicle. So let me go on to the other questions that were raised here. So I heard... So this goes to the issue of error, Your Honor. So forgive me. I'd like to try to make the case in any event that there was an error engaged in here. So if you look at page 5 of our opponents' brief, you'll see they say that we own and operate a shopping center consisting of multiple businesses, etc., in Vandeville, Louisiana, which it maintains on an accrual basis of accounting to the settlement program for processing. That's pages 5 to 6, okay? So what happened here is that the CSSP looked at this CAM account, this one CAM account, and the CAM account was actually done on a cash basis. It was not done on an accrual basis. And that's the error. It doesn't really use a mixed method of accrual and cash basis, which is perfectly fine. Actually, Your Honor, that's not true. You have to use an established method. No, Your Honor, if you look at the definition of error, right, it refers to a particular set of accounting methods. It talks about the main two, cash and accrual. Then it talks about modified cash. It talks about income tax. There are several other ones that aren't mentioned, like percentage of completion and some others. But this one-off way that the Pontchartrain North decided to treat this CAM account does not accord with any of those accounting methods. At no point have they argued that it accords with any of those accounting methods. But is it true that it's a descriptive matter, that it's using a mixed method of accrual and cash? But it's not... I'm not saying whether it's proper to do so at this point. That's descriptively what's actually occurring. It uses an accrual method for everything except CAM, and for CAM, it uses cash. And that's the error, because there is no accepted method of accounting in which you can do that. And if you look at the definition of an error, which I'm hunting up now in the... actually in my brief here, if you look at page 32, it sets out the definition of an error, right? And it says that... This is in the second paragraph. What are you reading from? I'm reading from BP's brief on page 32. It's the second block paragraph, Your Honor. And it says... What does that rely on, though? That relies on ROA 450, which is policy 495 at page 3, note 1. And what it states is that recognizing that the settlement agreement does not mandate that the P&Ls be based on GAAP or any particular basis of accounting, the CSSP will analyze the P&Ls under the basis, i.e. accrual, EG accrual, cash, modified cash, income tax, et cetera, you know, in the normal course of the business reflected in the P&Ls. Up above in the prior paragraph, it says that an error is defined to include mistakes in applying applicable accounting principles based on the claimant's method of accounting. So if you have adopted an accrual method of accounting, you cannot just decide for one element of revenue, namely in this instance CAN, to just start using the cash basis of accounting. Well, I understood that they had a history, though, of using the cash method that they applied in this one case for the annual costs of maintaining the facility. They did it. So we're not arguing, Your Honor, that they decided to switch it up just to gain this one particular application. I grant you that. But that doesn't mean that it's a valid method of accounting. Right? Is there a valid method of accounting that would take into consideration the factual circumstances here that they were trying to address? No, Your Honor. They could have used cash basis accounting, accrual basis accounting, which is the one they actually chose, accrual basis accounting, or modified cash. But they weren't using modified cash. That's the first time you've heard... What was the error? What was the error that they made in... The error is even in the name of their account. Their account is called CAN Last Year. And so all the CSSP did in this instance was say, this was in... They basically put that revenue into a year after they actually earned that revenue. And they said, no, you have to move it back to the year when you earned it. It's not CAN Last Year, it's CAN This Year. So that's what you do in an accrual accounting. So let me just do a quick, maybe, difference between accrual accounting and cash accounting. So cash accounting is when you pay out the cash for an expense, that's when it locks in on that time period. When you receive money from a customer or client, that's when you have revenue under cash. But under accrual accounting, that's not the way it works. Isn't it strange that the parties, when they agreed to the consent decree in this case, agreed that these various claimants could come in and ask for compensation based on their own accounting methods that they consistently use in their businesses? And BP has been trying to change that ever since the first case. Respectfully, Your Honor, no, we're not trying to change their accounting method. That's why I emphasize for you... You're trying to change the agreement of the parties that was held, that was recognized and rendered as a consent decree. We may be too far beyond that to worry about it now, but it seems to me that we made a misstep in ever requiring the District Court to vary these accounting methods. So, Your Honor, with all due respect, I don't think the accounting method is being varied. That's why I emphasize to you the concession, which is early on in their brief in page 5, that they used accrual accounting. But whatever they call it, a rose is a rose by any name. It is the method in which you say that they have used in their normal course of business and it's reflected in the contemporary P&Ls. And it says in the agreement specifically, to follow up on Judge Dennis' question, that the settlement agreement does not mandate the P&Ls be based on any particular basis of accounting and that the accountants will analyze the P&Ls under the basis of accounting used by the claimant in the normal course of business and reflected in the... This is the normal course of business, you've admitted that, and it is reflected in their contemporary P&Ls. So whether they call it accrual and you think it should be called some kind of deviated cash basis for one type of thing, you'd name it something different. It doesn't matter what it's called. So, Your Honor, the first thing I would point out is that... You know, I'm not an accountant, right? I'm not an expert in that area. But the expert accounting vendors that the CSSP retained under Judge Barbier's supervision, they came to the conclusion that this was not correct, right? They came to the conclusion that... But GAAP is not required. We're not arguing for GAAP, Your Honor. All we're saying is that because they selected the accrual method of accounting, they earned the revenue in the prior year. They couldn't use a one-off accounting method to move it to the later year. That's what they did. It's not that they can use any methods that's their normal course of business and reflected in the contemporary P&Ls. They can use any method that's that. Your Honor, if you read it to say that, right, then you've read as surplusage, language out of Policy 495 in the definition of error, that it says it includes things that have been inappropriately recorded in the claimant's contemporaneous P&Ls because they are mistakes in applying applicable accounting principles based on the claimant's method of accounting. So their method of accounting was accrual accounting, and there was a mistake in that method because... Are you saying that if an employer or an entity adopts a particular method of accounting, that they cannot vary from that with respect to any customer or expense that they have? Yes, Your Honor. If they select a particular method of accounting, they have to use it consistently. Indeed, for IRS purposes, if you're going to change your accounting, you need to notify the IRS. But he said he did not... They say they did not change it. In other words, they say that it was well-established because of the circumstances of when these expenses occur and when the cash comes in. Judge Jolly, I don't think it was well-established just because they did it repeatedly and just because they say another business did it before. You know, whenever this issue would come up in the lion's share of cases, the CSSP ruled that that was inconsistent with the accounting method that those businesses had used. What they really come up with is their own one-off accounting method. And you can't... For a particular account, for one account, right? For one item of revenue. For one item of revenue. Right. And they say that that's common in the industry. Do you refute that? I mean, they say that. Do you think that's false? Do you have evidence that says that's false in the record? No, Your Honor, we don't. But the point, again, Your Honor, is that the CSSP found that there was an inconsistency between the method that they used and the method that they actually applied in this particular instance to the CAM account. Tell me, what is the difference in the case that we have today and the myriad of cases that were remanded, apparently, to the administrator by the district court to reconsider, essentially, the accounting issues that we're dealing with today? So, Your Honor, again, my strong view, and having worked on several of these cases and on the documentation as they were state at the time and then as they went back to the CSSP, is that what went back to the CSSP were the decisions that came out under the invalidated ISM rationales, not under AVM. If AVM was applied, then there's no reason to send it back. And none of these cases would fall within the category of applying ATVM. Is that what you're saying? Your Honor, I see my... Well, actually, no, I have a little bit of time. So I'm not sure I understand your question. Well, I'm not sure I understand it either. The other cases that were sent back, did they involve claimants with AVM-type accounting? Generally, no, Your Honor. The cases that went back were ones that were decided under the invalidated ISM rationale because those are the ones that needed to go back. But Judge Barbier ordered that those go back also. He ordered that as to the ones, right, which go to this dispute we have about whether he's reading the Policy 495 decision correctly. But he did do that. He did do that. He ordered these to go back. So, Your Honor, as I said, we think we have substantial arguments that Judge Barbier was misreading the Policy 495 decision. But if you want to send it back because other cases that were decided under AVMM really were also sent back as well, then we won't fight that. Okay. Now, do you continue to maintain that you win even if there's no error? Are you going to argue that? Well, we think there are two ways in which we win. There's either error or, in this situation, the AVM was applied correctly to move revenue because it allows revenue to be moved. But the settlement agreement doesn't. Your Honor, let me... This is one of the things I had on my list, so let me return to that. Okay, so the settlement agreement doesn't say anything about moving or not moving revenues or expenses. This is all an outgrowth of this court's decision in the matching case in Deepwater Horizon 1 in October 2013. So then it was remanded to Judge Barbier. He approved Policy 495. Then this court invalidated part of Policy 495, but not all of Policy 495, which is what class counsel were suggesting. And then, on remand, he decided that there was part of Policy 495 in AVM, which had been fully upheld, that he was also going to say what he felt. And that's what we think we can win under that ground as well, because here, AVM allows the movement of revenue, and that was not disturbed by this court. It was affirmed by this court, and the CSSP did exactly that. It moved the revenue from the wrong year, CAM last year, that's why it's called CAM last year, to the prior year. Thank you. Thank you. Any further questions? Thank you, Your Honors. Your Honors, the settlement program, the appeal panel, never said that there was an error in the way that they were accounting. What they did is they saw, the settlement program saw this CAM last year account, and then they focused on this, and they said, yeah, this would be a great account to reallocate over the previous years. So what they were doing, rather than correcting an error, is they were matching it. They took revenues that related to previous year CAM expenses, and they moved it back to the year to match it. So there was no error here. And also, when BP says that the AVM method allows reallocation of revenue, that would make no sense, because the court said that all of the claims, including the four ISMs, would be sent back for reprocessing. So if, say, a former comes in, and his claim is being processed, and then the settlement program says, well, you know what, under our discretion, under 495, under the AVM, we can reallocate revenue. So that would just invalidate the 495 opinion that relates to the ISMs. So they could still use AVM to reallocate revenue. I think their thing is, except if it's a farmer and these other people, that they can always do it. It's just this tiny group of industries. Maybe it's not tiny. The subset of industries that they can't do it. That's their position. But they said that if... that it would be remanded and then processed under the AVM method. And then you're saying if they use the AVM method, they could still end up with the same result. If they use the AVM method, they could still have the same result. I think they mean modified AVM or something. You can use it, but you can't do this one thing in this one category of... I don't know. So, I mean, why would you pick out these individual industries which are more prone to recognizing revenue... I guess not recognizing revenue when the expenses are earned? I mean, you know, attorneys with a contingency fee case, you know, that they would go back over and recognize the expenses over the life of the case. They could still use that under their discretion. And if you have no further questions, thank you, Your Honor. Thank you, Your Honor. The case is submitted. Court will recess until...